UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL No. 25-CR-10334-MJJ |
| STEVEN WAYNE TOMPKINS, | |
| Defendant | |

## MOTION FOR HEARING REGARDING POTENTIAL ATTORNEY CONFLICT

Now comes the United States and moves the Court for a hearing regarding a potential conflict of interest and appearance of a conflict of interest posed by defense counsel's representation of the defendant, Steven Wayne TOMPKINS. Because the defense counsel ("Defense Counsel")[1] for the defendant was also the retained counsel for the victim's attorney, and for the reasons stated below, the government believes that a hearing is required to permit the defendant to make an informed decision regarding the potential conflict of interest and appearance of a conflict posed by Defense Counsel's representation of the defendant in this matter.

## FACTUAL BACKGROUND

TOMPKINS, the Sheriff for the Suffolk County Sheriff's Department, is charged with two counts of extortion, in violation of 18 U.S.C. § 1951. (Docket No. 1). As alleged in the indictment, TOMPKINS engaged in schemes to extort Individual A, who was an executive and owner of a holding company that held shares of a national cannabis cultivation and retail company ("Company A"), (i) into selling TOMPKINS a pre-IPO equity interest in Company A

---

[1] *See* Docket No. 12 (Notice of Attorney Appearance by Defense Counsel).

for $50,000 in exchange for TOMPKINS's favorable action or inaction as the Suffolk County

Sheriff with respect to a partnership between Company A and the Suffolk County Sheriff's

Department; and (ii) into refunding the entire $50,000 equity interest in Company A to

TOMPKINS at later dates in exchange for the same.

There are three issues underlying the potential conflict of interest and appearance of a

conflict of interest here.

First, Defense Counsel previously represented the attorney ("Attorney A") who currently

represents the victim in the present case ("Individual A," as defined in the Indictment, Docket

No. 1). Defense Counsel represented Attorney A in a federal case (docket number available

upon request) that was ultimately resolved in Massachusetts Superior Court (docket number

available upon request).[2]

Second, Defense Counsel and Attorney A share a close professional working

relationship. Defense Counsel and Attorney A served as joint counsel in two recent high-profile

matters that were tried in the Boston Federal Courthouse, *United States v. Sean O'Donovan*

(Docket No. 22-CR-10141) and *United States v. Cedric Cromwell and David DeQuattro* (Docket

No. 20-CR-10271).[3] This is yet another fact to consider in permitting the defendant to make an

---

[2] Without elaborating here, those cases involved critically important matters to Attorney A, which further underscores the relationship and trust that Attorney A has with Defense Counsel.

[3] In the O'Donovan case, both Defense Counsel and Attorney A represented the defendant at trial. In the Cromwell/DeQuattro case, Defense Counsel represented defendant DeQuattro and Attorney A represented defendant Cromwell at trial. To be clear, the government is aware of only these two most recent matters in which Defense Counsel and Attorney A worked closely. However, there may be other ongoing or previous matters in which they share a close working relationship of which the government is not aware.

informed assessment of the appearance of a conflict in this matter, where the defendant's attorney has a close relationship to the victim's attorney.

In the Cromwell/DeQuattro case, Defense Counsel and Attorney A worked together in defending their respective clients. For example, Attorney A, on behalf of defendant Cromwell, joined defendant DeQuattro's Motion to Dismiss (Docket Nos. 34 and 35). Cromwell also joined a Reply Brief filed by DeQuattro in support of DeQuattro's Motion to Dismiss. (Docket No. 44). Similarly, defendant DeQuattro joined defendant Cromwell's Motion for a Bill of Particulars. (Docket Nos. 43 and 55). Both defendants went to trial where Defense Counsel and Attorney A represented their respective clients. In the O'Donovan case, both Defense Counsel and Attorney A represented the defendant O'Donovan at a five-day trial. Both appeared for defendant O'Donovan's original sentencing hearings on November 27, 2023 and February 7, 2024, and both appeared for defendant O'Donovan most recently at his re-sentencing hearing on June 25, 2025.

Third, as part of Defense Counsel and Attorney A's joint advocacy for defendant O'Donovan at his sentencing hearing on November 27, 2023, Defense Counsel selected, presumably prepared, and called Individual A as a sworn witness on behalf of defendant O'Donovan.[4] What is more, not only did Defense Counsel call Individual A as a witness at the O'Donovan sentencing, Defense Counsel sought to have Individual A qualified as a lay expert witness at the O'Donovan trial. Defense Counsel's implicit endorsement of Individual A's

---

[4] Although Attorney A did the direct examination of Individual A at the O'Donovan sentencing hearing, it should be noted that the Defense Counsel drafted (i) a motion and moved *in limine* to permit Individual A to testify as a lay expert at the O'Donovan trial regarding cannabis lobbying practices; and (ii) an opposition to the government's motion to preclude Individual A from testifying as a defense lay expert. (*See* Docket. Nos. 71 and 134, respectively, filed Sept. 20, 2023 and Oct. 18, 2023).

credibility in such a setting is a further ground for a hearing regarding the potential conflict of interest/appearance of a conflict of interest here.

<u>**APPLICABLE LEGAL STANDARDS**</u>

The government requests a hearing pursuant to *Wheat v. United States*, 486 U.S. 153 (1988) and the Sixth Amendment to the United States Constitution to address the potential conflict of interest/appearance of a conflict of interest here.

Case law from the First Circuit and this District show that a hearing is appropriate for potential conflicts of interest regarding attorney representation. *See, e.g., United States v. Laureano-Perez*, 797 F.3d 45, 56 (1st Cir. 2015); *United States v. Lanoue*, 137 F.3d 656, 663 (1st Cir. 1998); *United States v. Abdelaziz*, 2020 WL 618697, at *2 (D. Mass. Feb. 10, 2020); *United States v. Arias*, 351 F.Supp.3d 198, 200 (D. Mass. 2019). This Court is allowed "considerable discretion" to make an "informed judgment" regarding potential conflicts of interest. *Lanoue*, 137 F.3d at 664 (internal citations and quotations omitted). Even though "a presumption exists in favor of the defendant's selection of counsel," a defendant's right under the Sixth Amendment to select the defendant's lawyer is not absolute as it can be overridden by the "independent interest" of "federal courts to "ensur[e] that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all those who observe them." *In re Grand Jury Proc.*, 859 F.2d 1021, 1023 (1st Cir. 1988) (quoting *Wheat*, 486 U.S. at 1697).

### A. Rule 1.7 – Representing Clients with Competing Interests

Massachusetts Rule of Professional Conduct ("Mass. R. Prof. C.") 1.7 expressly addresses conflicts stemming from an attorney's representation of two different clients with competing interests. Under Rule 1.7, "a lawyer shall not represent a client if the representation

involves a concurrent conflict of interest." Concurrent conflicts of interests arise where: "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another a client, a former client or a third person or by a personal interest of the lawyer."

Comment 1 to Rule 1.7 provides that "[l]oyalty and independent judgment are essential elements in the lawyer's relationship to a client. Concurrent conflicts of interest can arise from the lawyer's responsibilities to another client, a former client or a third person or from the lawyer's own interests." Comment 6 provides that "the client on whose behalf the adverse representation is undertaken reasonably may fear that the lawyer will pursue that client's case less effectively out of deference to the other client, i.e., that the representation may be materially limited by the lawyer's interest in retaining the current client." Comment 9 provides, "a lawyer's duty of loyalty and independence may be materially limited by responsibilities to former clients under Rule 1.9."

## **ARGUMENT**

Rule 1.7 is relevant because Individual A and by extension Attorney A's interests are "directly adverse" to the interests of the defendant. Under Rule 1.7, Defense Counsel appears to have responsibilities of loyalty and independent judgment to both the defendant and Attorney A even as their interests diverge in this case. It is likely that Attorney's A client, the victim in this case, will be subjected to cross-examination by Defense Counsel. A hearing regarding this potential conflict and appearance of a conflict is prudent to evaluate the ethical strictures of independent judgment and loyalty underlying Rule 1.7. For similar reasons, the close working

relationship between Defense Counsel and Attorney A simultaneous with their representation of clients with opposite interests in this case also makes Rule 1.7 relevant.

As noted above, Defense Counsel represented Attorney A in a case of significant importance to Attorney A. The trust, camaraderie, and respect that grew from that relationship cannot be underestimated. In fact, following that case, Defense Counsel took on Attorney A, not as a client, but as a partner, in handling serious criminal matters in federal criminal court. It is anticipated that Defense Counsel will cross-examine Individual A at trial in the present case. Even assuming that Defense Counsel accomplishes an effective cross-examination of Individual A, because of the relationship between the Defense Counsel and Individual A's attorney, a reasonable observer could question whether Defense Counsel pulled some punches so as to not cast Attorney A's client in such a negative light.

Furthermore, the defendant should be allowed to make an informed decision regarding the appearance of a conflict where Defense Counsel previously called Individual A – the victim of the defendant's alleged crimes – to support Defense Counsel's sentencing advocacy for defendant O'Donovan. By selecting and calling Individual A as a sworn witness in a federal sentencing proceeding, not to mention seeking to qualify Individual A as a defense lay expert at trial, Defense Counsel implicitly endorsed Individual A as a credible and knowledgeable witness, who was offering truthful testimony in federal court. Indeed, one would expect nothing less than Defense Counsel vouching for Individual A's credibility in a matter as important as a sentencing hearing for defendant O'Donovan. *See also* Mass. R. Prof. C., Rule 3.3 (Candor Toward the Tribunal).[5]

---

[5] Rule 3.3(a)(3) states that: "A lawyer shall not knowingly: … offer evidence that the lawyer knows to be false, except as provided in Rule 3.3(e). If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its

By virtue of this one fact alone, Defense Counsel could be precluded from exploring a typical line of cross-examination of Individual A (e.g.: Defense Counsel (question to Individual A): [Individual A], you and I have never met nor spoken to each other prior to your testimony today, correct?) that defense attorneys use to establish that they have no familiarity or prior bias against the witness whom they are cross-examining. Certainly, the defendant should be apprised of all of these circumstances so that the defendant can make an informed decision regarding his continued retention of Defense Counsel as his attorney.

To ensure that defendant Tompkins is knowingly and willingly proceeding with Defense Counsel despite a potential conflict or appearance of conflict, the government proposes having a limited inquiry to ensure the integrity of these proceedings. A defendant can waive a conflict of interest if the waiver is knowing, intelligent and voluntary, and the circumstances are such that the legal proceedings appear fair to all who observe them. *Wheat v. United States*, 486 U.S. 153, 160 (1988); *see also Yeboah-Sefah v. Ficco*, 556 F.3d 53, 68 (1st Cir. 2009) (waiver must be "knowing, intelligent, and voluntary.") (internal citations and quotations omitted).

## CONCLUSION

For those reasons stated above, the government requests a hearing to address the potential conflict of interest and appearance of conflict of interest raised by Defense Counsel's representation of the defendant.

---

falsity, the lawyer shall take reasonable remedial measures, including if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false."

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    /s/ John T. Mulcahy
       John T. Mulcahy
       Dustin Chao
       Assistant United States Attorneys
       617/748-3641

## LOCAL RULE 7.1(a)(2) CERTIFICATION

Undersigned counsel conferred with counsel for the defendant before filing this motion. The defendant opposes this motion.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ John T. Mulcahy
John T. Mulcahy
Assistant United States Attorney

Date: October 14, 2025