UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) |
| v. | ) ) No. 25-CR-10334-MJJ |
| STEVEN WAYNE TOMPKINS, Defendant | ) Leave to File Granted on ) November 6, 2025 ) ) ) |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO HIS MOTION TO SUPPRESS**

The affidavits submitted in support of the warrant applications, *at the very most*, *but see* Dkt. 39 at 11-12, set forth probable cause to believe that a transaction between Mr. Tompkins and Individual A, occurring during a readily identified date range, November 2020 through July 2023, may have violated specific federal criminal statutes. The government converted this relatively narrow showing into applications for warrants that authorized first the seizure of what effectively amounts to the entire contents of Mr. Tompkins's digital life followed by law enforcement searches through a voluminous universe of the seized data regardless of its lack of nexus by time or subject to the targeted alleged federal crimes being investigated. The specific categories of documents listed in the warrants lay bare the government's underlying purpose for these massive seizures: to uncover as yet unknown "ethics violations" or any other misconduct that Mr. Tompkins may have committed, which fall far beyond the scope of the Hobbs Act or any other federal criminal prohibition. Exhibits B and D at 8. The Fourth Amendment prohibits the government from seizing a public official's email accounts to engage in such a wide-ranging

1

fishing expedition in hopes of turning up evidence of any conceivable wrongdoing particularly when it involves a predictable and profound intrusion into the most private communications of the subject of the warrants. Accordingly, the Court should grant the Motion to Suppress.

I.  **The Affidavits Did Not Give Rise to Probable Cause That Mr. Tompkins Was Involved in Any Bribery Scheme**

While the Fourth Amendment's probable cause standard does not require proof beyond a reasonable doubt, it does demand "more than bare suspicion," namely "facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information . . . sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Dkt. 39 at 10 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). The showing of probable cause must relate to a federal criminal offense, not a suspected state ethics violation. *See United States v. Brissette*, No. 16-CR-10137, 2020 WL 718294, at *1 (D. Mass. Feb. 12, 2020) (Sorokin, J.) ("The Hobbs Act does not empower federal prosecutors to use the criminal law to enforce . . . a state code of conduct that itself has no criminal or even civil penalties, or a local government policy.").

The mere fact of the SCSD giving permission for Company A to hire former inmates pursuant to its pre-existing re-entry program, Mr. Tompkins's subsequent investment in Company A, and Individual A's later refunding of Mr. Tompkins's investment, *see* Dkt. 52 at 7-8, simply do not, without more, "warrant a man of reasonable caution" in concluding that a *quid pro quo* bribery offense occurred. *See Brissette*, 2020 WL 718294, at *12 ("In 'color of official right' extortion prosecutions, the Supreme Court has drawn a clear line to mark the boundary of criminal liability under the Hobbs Act, requiring proof of a quid pro quo . . . ."). To the contrary, these facts are at least equally consistent, and the defense contends far more so, with at most a

mere gratuity insufficient to support conviction for any offense cited in the warrant affidavits. *See United States v. Clark*, 31 F.3d 831, 835 (9th Cir. 1994) (holding "evidence, which is equally consistent with both legal or illegal activity . . . simply not sufficient to establish probable cause"). The affidavits' mere allegation of "reasonable cause" to believe that a *quid pro quo* exchange occurred, Dkt. 52 at 7 (citation omitted),[1] is the quintessential conclusory assertion, unsupported by specific facts, entitled to no weight in the probable cause analysis. *See, e.g.*, *United States v. Samboy*, 433 F.3d 154, 159 (1st Cir. 2005) ("Probable cause cannot be based on conclusory statements . . . ."). The affidavits are independently infirm for failure to identify any official act, within the meaning of *McDonnell v. United States*, 579 U.S. 550 (2016), that Mr. Tompkins allegedly performed or agreed to perform in exchange for payment. Allowing or refusing to permit Company A to participate in a pre-existing re-entry program widely available to reputable employers does not constitute such an official act. *See* Dkt. 28 at 21-22.

## II.    The Material Omissions from the Affidavits Require a *Franks* Hearing

The government faults the defense for asserting, in its opening Motion, that the affiant had reviewed PIP submissions after the initial April 2020 submission. *See* Dkt. 52 at 10 ("The defendant has zero proof for this contention."). But the affidavits implied, in no uncertain terms, that the renewal applications had been reviewed. *See* Dkt. 39 at 15 (quoting allegation that Mr.

---

[1] The government has conceded, implicitly, that there was no agreement that Company A would give a benefit to the defendant at the time of any alleged affirmative official action, *i.e.*, the sending of letters to the CCC affirming Company A's willingness to employ appropriate ex-inmates, thus probable cause must be found ***if at all*** on factual representations that at or after November 2020 when the defendant was sold a tiny percentage of Individual A's company (0.0014%) for full value there was an agreement to not withdraw from offering Company A the right to hire inmates and further that such an agreement would satisfy the official act and *quid pro quo* and wrongfulness elements of § 1951.

Tompkins played "'an integral role in . . . [Company A's] **continued re-licensure**' and that Company A's PIP 'relies significantly upon its planned, **and ongoing**, partnership with the SCSD'"); *see also* Dkt. 52 at 3 (government opposition repeating allegation); Exhibits A and C ¶ 21 (alleging "ongoing partnership"), ¶ 38 (citing SCSD's "pivotal role in [Company A's] ongoing PIP obligations"). Simply put, these allegations are irreconcilable with the government's current position that the affiant reviewed only the initial April 2020 PIP submission. To the extent the affiant's review was so limited, that would render his repeated assertion of an "ongoing" partnership nearly four years later so utterly baseless as to independently warrant a *Franks* hearing.

Moreover, all CCC applications, including PIP submissions, are public documents. *See* 935 Mass. Code Regs. 501.820(1) ("All records made or received by the Commission shall be public records and shall be available for disclosure on request," with exceptions not applicable here). Undersigned counsel confirmed with the CCC that renewal applications may be requested by the general public. Accordingly, a simple public records request would have generated the other documents which, once reviewed, would show no continuous relationship with the SCSD and no representation that Company A hired more than one former inmate (much less six per year) once the dispensary opened. In this context, the government's explanation that it "had not yet served a grand jury subpoena on the CCC" at the time the affidavits were executed, Dkt. 52 at 7 n.5, rings hollow. The government was obligated to obtain the renewal applications before explicitly and repeatedly alleging that the SCSD's relationship with Company A was ongoing. *See United States v. Tanguay*, 787 F.3d 44, 53 (1st Cir. 2015) ("All that is required to trigger an officer's duty of further inquiry is h[is] knowledge of an obvious and unexplored reason to doubt

the truthfulness of the allegations."); *United States v. Vigeant*, 176 F.3d 565, 573 (1st Cir. 1999) (finding reckless omission where affiant "could have (but did not) obtain [defendant's] employment status from the probation office, apparently deciding instead to infer (without informing the magistrate that he had done so) [defendant's] present unemployment from a blank space marked 'current employment' on a two-year-old bank application"). In fact, as the government does not dispute, the relationship was not ongoing as repeatedly represented in the affidavits at issue. *See* Dkt. 39 at 14-15.

The government's factually inaccurate representation on this point was no peripheral matter. To the contrary, Company A's PIP submissions were, and still remain, the linchpin of the bribery allegation. *See* Exhibits A and C ¶¶ 20-21, 32, 38. Having specifically relied upon Mr. Tompkins's alleged "integral role in [Company A's] PIP," *id.* ¶ 20, the government is poorly situated to claim, as it now does, that the omissions regarding the PIP applications subsequent to November 2020, including that Company A relied on an increasing number of alternative programs and entities for satisfying the requirement over time and that the SCSD had been removed entirely from the PIP submission prior to execution of each of the affidavits, "do[] not matter." Dkt. 52 at 10.

The defense argument, far from implying an obligation by the government "to pursue every investigative lead," Dkt. 52 at 11, is a straightforward application of the Fourth Amendment's demand of "a *truthful* showing," as opposed to a showing reliant upon recklessly false statements, in support of probable cause. *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978). Having chosen to launch a federal bribery investigation predicated on the SCSD's ongoing involvement in Company A's PIP submissions, the government was not free to forge

ahead based on four-year old information, without taking basic investigatory steps to confirm the truth of its allegations (which, in fact, were demonstrably false).

The government is also incorrect in asserting that it did not have "access" to Mr. Tompkins's September 2019 letter confirming Company A's ability to participate in the re-entry program at the time the affidavits were executed.  *See* Dkt. 52 at 9.  This document is publicly available on the CCC website, as an attachment to a public record dated March 30, 2020.[2]  And contrary to the government's contention, the existence of the letter does not provide "*more probable cause.*"  Dkt. 52 at 10.  Rather, the fact that Mr. Tompkins had confirmed the SCSD's relationship with Company A to the CCC long before any allegation of a *quid pro quo* agreement strongly suggests that no bribery occurred.  *See* Dkt. 39 at 13 ("The Hobbs Act, like other federal bribery statutes, requires *quid pro quo* bribery, meaning 'the agreement to exchange a thing of value for an official act' must be 'made before the act is performed.'" (quoting *United States v. Correia*, 55 F.4th 12, 31 (1st Cir. 2022)).

Finally, the defense Motion did not, as the government wrongly alleges, "misconstrue[]" the two-part *Franks* standard.  Dkt. 52 at 8.  Rather, after outlining the three reckless omissions, the Motion went on to explain that, "once the material omissions are corrected," the affidavits "do not support any" finding of probable cause.  Dkt. 39 at 16.  This is precisely the inquiry required under First Circuit caselaw.  *See, e.g.*, *Tanguay*, 787 F.3d at 54 (explaining that courts must ask "whether the affidavit, expanded to include th[e] new information, would continue to support a finding of probable cause").

---

[2] The file itself identifies Company A by name, so, in an abundance of caution, the defense has omitted the link from this public filing.  It is prepared to submit a copy of the document under seal at the Court's request.

### III. The Initial Production of Mr. Tompkins's Complete Email Accounts to the Government Violated the Particularity Requirement

Whether a warrant, like those at issue here, calling for wholesale production of the entire contents of a suspect's email accounts (and purporting to limit the subsequent "search" of such data by the government) violates the Fourth Amendment's particularity requirement is an unsettled question of law that has divided district court judges. *See* Dkt. 39 at 17-20 (citing cases). Contrary to the government's suggestion, *United States v. Aboshady*, 951 F.3d 1 (2020), did not decide the issue. *See* Dkt. 39 at 21 n.4.

The defense Motion is not premised as the government alleges upon any "specific search protocols like keyword searches." Dkt. 52 at 14. Rather, the defense contends that the Fourth Amendment requires the government to impose **some** limitations and not to simply seize the entire contents of a suspect's email accounts. Notably absent from the first step of the warrants is any date limitation, notwithstanding that the suspected bribery as alleged in the affidavits spanned at the very most only November 2020 through July 2023. While a date limitation is not invariably required for all warrants,[3] it was necessary in this case where the suspected criminal activity occurred in an identifiable time period *and the warrants reflect no other meaningful limitation of any kind. See, e.g.*, *United States v. Abrams*, 615 F.2d 541, 545 (1st Cir. 1980) ("A

---

[3] The government's primary authority on this issue, *United States v. Bucuvalas*, 970 F.2d 937 (1st Cir. 1992), is inapposite. That case involved a RICO investigation into "an entrenched, regenerating criminal conspiracy which was sustained and perpetuated through an extensive web of fraudulent license applications, renewals, straw ownerships, and a pattern of bribes extending over a period of at least seven years." *Id.* at 940 (internal quotation marks omitted). The allegations in support of the warrant went as far back as 1960, 27 years prior to the search. *See id.* It was in this very different context that the First Circuit observed, "[t]emporal delineations are but one method of tailoring a warrant description to suit the scope of the probable cause showing." *Id.* at 942 n.7.

time frame should also have been incorporated into the warrant."). Moreover, the warrants were not limited to emails, but instead extended to "other user-generated data stored with those accounts," Exhibits B and D at 4, including "all text or instant messages," "all electronic data files, whether word-processing, spreadsheet, image, video, or any other content," and "all calendar data." Exhibit B at 6; *see also* Exhibit D at 6 (similar).

In short, the government is correct that the Fourth Amendment does not dictate the precise means by which a search is conducted. But it does require the government to do something to limit the intrusion upon the suspect's privacy. The defense submits that the Fourth Amendment does not permit the government, in every case in which it demonstrates probable cause to believe that some criminal activity occurred (however limited), to seize the entire contents of here 11 years of the Sheriff's digital life as to Comcast, 8 years as to Google.

## IV. The Enumerated Categories of Materials to Be Searched and Seized by Investigators Exceeded the Scope of Any Probable Cause and Therefore Violated the Particularity Requirement

The government does not contend, because it cannot, that there was probable cause to suspect any arguable violation of the Hobbs Act or any other federal criminal law prior to November 2020 or after July 2023. The allegations cited by the government pre-dating 2020 have nothing to do with bribery, extortion, or any federal crime. *See* Dkt. 39 at 22; Dkt. 52 at 16. Assuming *arguendo*, and contrary to Section I *supra*, that the affidavits satisfied the probable cause standard at all, it was only with respect to Mr. Tompkins's interactions with Individual A during that discrete time period. Despite this narrowing theory, the government nonetheless sought and obtained authorization to review a wide array of emails, text messages, and other documents over an 11-year (or, for the Google warrant, 8-year) period encompassing all

communications with countless people other than just Individual A (*e.g.*, with every person working in the SCSD).

Setting aside the overbroad date range, the government undertakes no effort to defend the categories of items subject to search, other than by invoking the prefatory language listing "enumerated crimes" of conspiracy, federal programs bribery, honest services wire fraud, Hobbs Act extortion, and sale of unregistered securities. Dkt. 52 at 17 n.11. But, given the breadth of the federal conspiracy statute, and the lack of any narrowing language (*e.g.*, conspiracy to violate § 1951 or § 666) the prefatory language goes far beyond the scope of any probable clause, potentially including any and all federal criminal offenses.

*United States v. Kuc*, 737 F.3d 129 (1st Cir. 2013), is not to the contrary. There, the Court held that prefatory language materially indistinguishable from that at issue here was not overbroad, given the more specific categories subsequently set forth, which the defendant (unlike Mr. Tompkins) did not challenge. *See id.* at 132-33 & n.2. In essence, the government gets *Kuc* backwards. The government argues that the categories of materials set forth in the warrants, which it implicitly concedes do not satisfy the particularity requirement on their own, are salvaged based on vague prefatory language which *Kuc* only affirmed in reference to the unchallenged, more specific categories enumerated in that case. The Court should reject the government's clearly incorrect reading of the caselaw.

The categories set forth in the warrants, which again the government undertakes no effort to defend standing alone, betray the government's improper purpose. Far from being limited to suspected extortion of Individual A, the warrants are specifically targeted to evidence of (unknown) state ethics violations. *See* Exhibits B and D at 8 (authorizing search of all

communications about Mr. Tompkins's "campaign finances," his "campaign and/or campaign committee," or his "food, travel, and entertainment, and/or ethics violations," among many other things). These subject matters are unrelated to the narrow federal probable cause of bribery or extortion occurring, if at all, after November 2020.

The overbreadth of the warrants is perhaps nowhere clearer than in their authorization to search all Mr. Tompkins's correspondence with SCSD personnel. It bears repeating that Mr. Tompkins was elected to lead the SCSD. That agency was a legitimate employer, not a criminal enterprise. An arguable showing of probable cause to believe that an isolated transaction violated federal bribery laws cannot possibly justify the government's review of each and every communication Mr. Tompkins had with SCSD personnel dating back years to 2013 or 2016, *i.e.*, 7 or 4 years before an isolated transaction with Individual A.

Similarly, the government fails to convincingly explain how Mr. Tompkins's "financial knowledge is probative of his intent and knowledge" to violate "bribery laws." Dkt. 52 at 18. Whether or not Mr. Tompkins was a "sophisticated investor" in November 2020, for example, simply has no bearing on whether he intended to agree to a *quid pro quo* exchange of his official acts for payment or whether his financial records after November 2020 are relevant to a federal crime. This is not a prosecution for tax fraud, or any other crime implicating the defendant's financial knowledge.

In sum, the Fourth Amendment does not permit the government, based on an isolated instance of suspected bribery, to seize and review all communications associated with a public official's email accounts, with the express purpose of uncovering evidence of state ethics violations, far beyond the scope of the federal criminal code.

Respectfully Submitted,<br>
STEVEN TOMPKINS<br>
By His Attorney,

**/s/ Martin G. Weinberg**<br>
Martin G. Weinberg, Esq.<br>
Mass. Bar No. 519480<br>
20 Park Plaza, Suite 1000<br>
Boston, MA 02116<br>
(617) 227-3700<br>
owlmgw@att.net

Dated: November 6, 2025

**CERTIFICATE OF SERVICE**

I, Martin G. Weinberg, hereby certify that on this date, November 6, 2025, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**<br>
Martin G. Weinberg, Esq.