UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | No. 25-CR-10334-MJJ |
| v. | ) ) |  |
| STEVEN WAYNE TOMPKINS, Defendant | ) ) ) ) ) |  |

**<u>DEFENDANT STEVEN TOMPKINS'S REQUESTS FOR INSTRUCTIONS TO THE JURY</u>**

Martin G. Weinberg, Esq.
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

1

**Request No. 1**

**Caution as to Cooperating Witness**

You have heard the testimony of Frank Perullo.  He provided evidence under agreements with the government and testified under a grant of immunity.  It is obvious that promises of immunity or leniency premised on cooperation in a particular case may provide a strong inducement to falsify in that case.  For this reason, Mr. Perullo's testimony must be scrutinized with great care and caution to be certain that it is not shaded or slanted in such a way to serve the interests of the witness rather than that of the truth.  You should not convict Mr. Tompkins based on Mr. Perullo's unsupported testimony unless you find beyond a reasonable doubt that Mr. Perullo is telling the truth.[1]

---

[1] *See United States v. Dailey*, 759 F.2d 192, 198 & 200 n.8 (1st Cir. 1985).

**Request No. 2**

**Elements of the Offense: Hobbs Act Extortion**

Mr. Tompkins is charged in Counts 1 and 2 with Hobbs Act extortion.  For you to find Mr. Tompkins guilty of this offense, you must be convinced that the government has proven each of the following things beyond a reasonable doubt:

First, that Mr. Tompkins knowingly and willfully and with a corrupt intent induced Mr. Perullo to part with property;

Second, that Mr. Tompkins knowingly and willfully did so by extortionate means;

Third, that the extortion affected interstate commerce.[2]

The government has charged two alternative theories of extortion here.  The first is called extortion under color of official right.  The second is extortion by fear of economic loss.

---

[2] *See United States v. Cruzado-Laureano*, 404 F.3d 470, 480 (1st Cir. 2005).

3

**Request No. 3**

**Requirement That the Defendant Act Willfully**

Both government theories require proof beyond a reasonable doubt that Mr. Tompkins acted willfully.  To act "willfully" means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed – that is to say, with a bad purpose, either to disobey or disregard the law – not to act by ignorance, accident, or mistake.

**Request No. 4**

**Requirement of Knowledge That Mr. Tompkins Was Not Entitled to the Property**

Additionally, in order for you to convict Mr. Tompkins on any Count, you must find that the government proved beyond a reasonable doubt that Mr. Tompkins knew he was not legally entitled to the property he received notwithstanding his belief that Mr. Perullo agreed to sell him shares of stock at a value set by Mr. Perullo or that Mr. Perullo voluntarily consented to return his investment rather than sell the shares of stock.[3]  Accordingly, if you find that the government failed to exclude a reasonable possibility that Mr. Tompkins believed he was entitled to receive an equity interest in Ascend for his $50,000 payment, and/or that he believed Mr. Perullo had voluntarily agreed to the exchange or that Mr. Tompkins believed he was entitled to request and receive a refund of that investment, you must find him not guilty.

---

[3] *See United States v. Didonna*, 866 F.3d 40, 47 (1st Cir. 2017).

**Request No. 5**

**Requirement of Unanimity**

I will now instruct you regarding the elements of the government's two theories of extortion.  In order to convict Mr. Tompkins on any Count, all of you must unanimously agree that the government has satisfied all elements of either extortion under color of official right or extortion by fear of economic loss.  If, by contrast, only some of you believe that the government has satisfied the elements of one theory, and the remainder of you believe that the government has satisfied the elements of the other theory, you may not return a guilty verdict.

**Request No. 6**

**Elements of the Offense: Extortion Under Color of Official Right**

To prove extortion under color of official right, the government must show that (1) Mr. Tompkins obtained property to which he knew he was not entitled and (2) knew at the time that he was obtaining the property that it was being corruptly offered (3) and knew that the property was being sold by Mr. Perullo in exchange for the promise of or commission of specific official acts.  In other words, the government must prove Mr. Tompkins's intent to effect a "*quid pro quo*," meaning the giving of something of value – the *quid* – in exchange for Mr. Tompkins's official acts – the *quo*.[4]

---

[4] *See United States v. DeQuattro*, 118 F.4th 424, 444 (1st Cir. 2024); *United States v. Correia*, 55 F.4th 12, 29 (1st Cir. 2022).  This instructional request reflects the current contours of the law, which treats Hobbs Act extortion under color of official right as "the rough equivalent of . . . 'taking a bribe.'"  *Evans v. United States*, 504 U.S. 255, 260 (1992).  The defense, however, preserves, and expressly does not waive, its alternative contention that "*Evans* erred in equating common-law extortion with taking a bribe."  Dkt. 28 at 25 (quoting *Ocasio v. United States*, 578 U.S. 282, 302 (2016) (Thomas, J., dissenting)).

**Request No. 7**

**Extortion Under Color of Official Right: Requirement of *Quid Pro Quo* Agreement to Exchange**

In the context of extortion under color of official right, conviction requires proof beyond a reasonable doubt of a specific intent to give or receive something of value in exchange for an official act.[5]  Here, in order to convict Mr. Tompkins on any Count, the government must prove beyond a reasonable doubt that he reached a corrupt agreement with Mr. Perullo for Mr. Perullo to provide items of value to Mr. Tompkins in exchange for Mr. Tompkins's agreement to take specific and particularized official acts.

A *quid pro quo* requires a corrupt agreement by both the payor and the official.[6] Accordingly, in order to convict Mr. Tompkins, you must find that he intended to accept the equity interest in Ascend and/or the subsequent refund of his investment in exchange for official acts and that Mr. Tompkins believed that Mr. Perullo had offered those items as a bribe in exchange for Mr. Tompkins's official acts.

---

[5] *See supra* page 7 n.4; *United States v. Sun-Diamond Growers of Calif.*, 526 U.S. 398, 404-05 (1999); *United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013).

[6] *See, e.g.*, *United States v. Terry*, 707 F.3d 607, 615 (6th Cir. 2013) ("A flow of benefits from one person to a public official, to be sure, does not by itself establish bribery.  The benefits instead must be part and parcel of an agreement by the beneficiary to perform public acts for the patron."); *United States v. Jefferson*, 674 F.3d 332, 358 (4th Cir. 2012) ("[T]he public official's intent to perform acts for the payor—required for a bribery offense—is the exchange, or quid pro quo, missing from the illegal gratuity scenario."); *United States v. Siegelman*, 640 F.3d 1159, 1172 (11th Cir. 2011) (affirming instruction that "required the jury to find an agreement to exchange a specific official action for a campaign contribution"); *United States v. Schaffer*, 183 F.3d 833, 841 (D.C. Cir. 1999) (explaining that bribery "can be seen as having a two-way nexus"), *vacated as moot*; *United States v. O'Donovan*, 126 F.4th 17, 32 (1st Cir. 2025) ("The federal bribery statute criminalizes the offering and taking of bribes, but only the latter requires the parties to reach a quid pro quo agreement.").

**Request No. 8**

**Extortion Under Color of Official Right: Gratuities and Rewards**

I want you to think carefully about what it means for a payment to be *in exchange* for an official act.  A payment is not extortion, but is instead known as a gratuity, if it is merely a reward for some hoped for or even expected future act that the public official may take and may have already determined to take.[7]  In those situations, the payment is not in exchange for the public official taking an official act.  A gratuity is not enough to support a guilty verdict for the offenses charged in this case.

---

[7] *See United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013); *Snyder v. United States*, 603 U.S. 1, 5-6 (2024).

**Request No. 9**

**Extortion Under Color of Official Right: Definition of Official Act**

The term "official act" means a decision or action on a question, matter, cause, suit, proceeding, or controversy, which may at any time be pending, or which may by law be brought before the public official, in his official capacity.  Here, the government must prove beyond a reasonable doubt that Mr. Tompkins intentionally conveyed to Mr. Perullo an intent to be influenced in the performance of an official act or acts at the time of the allegedly corrupt agreement.

First, the government must identify a question, matter, cause, suit, proceeding, or controversy that involves a formal exercise of governmental power that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee.  It must be specific and focused.  This entails something relatively circumscribed – the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete.  Merely arranging or hosting meetings; arranging or hosting events; contacting, calling, or speaking with other government officials; expressing support; lobbying other governmental agencies; and advocating for constituents or supporters; without more, are not official acts.

Second, the government must prove that the public official made a decision or took an action on the relevant question, matter, cause, suit, proceeding, or controversy, or agreed to do so. A public official may gather information about an official act, discuss an official act with others, or express support or opposition to an official act, without that public official actually making a

10

decision on an official act.[8]

---

[8] *See McDonnell v. United States*, 579 U.S. 550, 566-74 (2016); *e.g.*, *United States v. De Moya*, No. 24-3013, 2026 WL 1955627, at *4 (D.C. Cir. July 7, 2026).

**Request No. 10**

**Extortion Under Color of Official Right: Requirement of Discretionary Action**

An official act must involve the exercise of discretion, like for example a legislator supporting a bill, as opposed to a merely ministerial action.[9]  Thus, for example, Mr. Tompkins's mere signing or authorizing of a letter memorializing an arrangement between the Suffolk County Sheriff's Department and Ascend that was already in place is not an official act, but rather a ministerial act.

---

[9] *See Woodward v. United States*, 905 F.3d 40, 42 & 47 (1st Cir. 2018).

**Request No. 11**

**Extortion Under Color of Official Right: September 2019 Letter from Mr. Tompkins Cannot Support *Quid Pro Quo***

The law requires an agreement to exchange an official act for payment prior to the performance of the official act in question.[10]  A payment not made or agreed upon until after the official act is, at worst, a gratuity not sufficient to support conviction.[11]  Here, the government does not allege that Mr. Tompkins and Mr. Perullo agreed that Mr. Tompkins would purchase and then receive an equity interest in Ascend until many months after Mr. Tompkins's September 2019 letter memorializing the Suffolk County Sheriff Department's permission for Ascend to participate in its offender re-entry program.  Accordingly, the September 2019 letter is not an official act that can support Mr. Tompkins's conviction on any Count.

---

[10] *See United States v. Correia*, 55 F.4th 12, 31 (1st Cir. 2022).
[11] *See Snyder v. United States*, 603 U.S. 1, 5-6 (2024).

**Request No. 12**

**Extortion Under Color of Official Right: Requirement of Change in Official Acts**

The government must also prove beyond a reasonable doubt that Mr. Tompkins, in exchange for payment, agreed to change an official position that he would otherwise have taken or to take official acts that he would not otherwise have taken but for that payment.[12]  Accordingly, if you find that Mr. Tompkins would have continued allowing Ascend to participate in the Suffolk County Sheriff Department's offender re-entry program regardless of his receipt of an equity interest in Ascend or subsequent refund of his investment, you must find Mr. Tompkins not guilty on all Counts.

---

[12] *See United States v. Sawyer*, 85 F.3d 713, 741 (1st Cir. 1996) (requiring in Travel Act bribery case "an intent to cause the recipient to alter her official acts"); *United States v. Woodward*, 149 F.3d 46, 55 (1st Cir. 1998); *United States v. Urciuoli*, 613 F.3d 11, 15 (1st Cir. 2010) (affirming, in honest services fraud case, instruction requiring government to prove that payment was intended to cause the recipient "to alter his official acts, to change an official position that he would otherwise have taken or to take official actions that he would not have taken but for the payment"); *United States v. Tavares*, 844 F.3d 46, 56 (1st Cir. 2016) (citing, in the context of state gratuity statute, lack of evidence that official "change[d] his voting pattern" (internal quotation marks omitted)).  *But see United States v. McDonough*, 727 F.3d 143, 160 (1st Cir. 2013).

**Request No. 13**

**Elements of the Offense: Extortion by Fear of Economic Loss**

To prove extortion by fear of economic loss, the government must show: (1) that Mr. Perullo believed that economic loss would result from failing to comply with Mr. Tompkins's demands; (2) that the circumstances made the fear reasonable; (3) that Mr. Tompkins knowingly and intentionally used Mr. Perullo's fear to induce his consent; and (4) that Mr. Tompkins's use of Mr. Perullo's fear was wrongful.[13]  The loss feared must be a particular economic loss, not merely the loss of a potential benefit.[14]

---

[13] *See United States v. Rivera Rangel*, 396 F.3d 476, 483 (1st Cir. 2005); *United States v. Brissette*, No. 16-CR-10137, 2020 WL 718294, at *11 (D. Mass. Feb. 12, 2020)

[14] *See Rivera Rangel*, 396 F.3d at 483.  The defense preserves, and expressly does not waive, its contention that a *quid pro quo* is also required to convict a public official of extortion by fear of economic loss.  *See* Dkt. 28 at 23.

15

**Request No. 14**

**Extortion by Fear of Economic Loss: Requirement of Reasonable Fear**

In order for you to convict Mr. Tompkins of extortion by fear of economic loss, you must find that the government proved beyond a reasonable doubt that Mr. Perullo reasonably feared economic loss if he did not agree to Mr. Tompkins's alleged demands. Accordingly, if you find that Ascend's participation in the Suffolk County Sheriff Department's offender re-entry program was not necessary to its continued licensure with the Massachusetts Cannabis Control Commission, and that a reasonable person would not fear economic loss in the event the Sheriff Department withdrew its permission for Ascend to participate, you must acquit Mr. Tompkins on all Counts.

16

**Request No. 15**

**Extortion by Fear of Economic Loss: Requirement That Defendant Intentionally Used Fear**

You must additionally find that Mr. Tompkins intentionally used Mr. Perullo's fear. Accordingly, if you find that Mr. Tompkins did not know or believe that Mr. Perullo was fearful that Ascend's license would be rescinded or that other significant prejudice would result if the agreement between the Suffolk County Sheriff's Department and Ascend ended, then Mr. Tompkins did not intentionally use extortionate means that resulted in Mr. Perullo's selling him a share of his company and you must acquit Mr. Tompkins.

17

**Request No. 16**

**Extortion by Fear of Economic Loss: Requirement That Feared Economic Loss be Wrongful**

Fear of economic loss is not necessarily wrongful, as required to support conviction. Rather, fear of economic harm is part of many legitimate business transactions and may also be a necessary consequence of many legitimate exercises of official authority.[15]  In order to obtain a conviction, the government must prove beyond a reasonable doubt that Mr. Tompkins both used wrongful means and that he did so to achieve a wrongful purpose.[16]

Here, if you find that Mr. Tompkins's payment of $50,000 represented the fair market value for the equity interest in Ascend, his receipt of that interest was not wrongful and you must acquit him on Count 1.  Similarly, if Mr. Perullo voluntarily consented to provide Mr. Tompkins a refund of his investment, Mr. Tompkins's request was not wrongful and you must acquit him on Count 2.

---

[15] *See United States v. Brissette*, 919 F.3d 670, 685 (1st Cir. 2019).
[16] *See United States v. Brissette*, 2020 WL 718294, at *13 & n.27 (D. Mass. Feb. 12, 2020) (citing cases).

**Request No. 17**

**Good Faith**

The offenses charged in the indictment require proof that Mr. Tompkins acted with criminal intent. If you find that Mr. Tompkins acted in "good faith," that alone would be a complete defense against any charge in the indictment because good faith on the part of Mr. Tompkins would be inconsistent with his acting with a criminal intent.

A person acts in "good faith" when he has an honestly held belief, opinion, or understanding that his conduct was not unlawful, even if the belief, opinion, or understanding turns out to be inaccurate or incorrect. If, for example, the government fails to exclude a reasonable possibility that Mr. Tompkins honestly believed his receipt of an equity interest in Ascend was not part of an exchange for his agreement to continue allowing Ascend to participate in the Suffolk County Sheriff Department's offender re-entry program, that is a complete defense and Mr. Tompkins is entitled to an acquittal on Count 1. Similarly, if the government fails to exclude a reasonable possibility that Mr. Tompkins honestly believed he had a right to request a refund of his investment, or that Mr. Perullo voluntarily consented to it, that is a complete defense and Mr. Tompkins is entitled to an acquittal on Count 2.

Mr. Tompkins does not have the burden of proving "good faith." Good faith is a defense because it is inconsistent with the intent requirement of the offenses charged. As I have told you, it is the government's burden to prove beyond a reasonable doubt each element of the offense, including the mental state element. In deciding whether the government proved that Mr. Tompkins acted with the criminal intent required of any particular charge or, instead, whether Mr. Tompkins acted in good faith, you should consider all of the evidence presented in the case that may bear on

his state of mind. If you find from the evidence that Mr. Tompkins acted in good faith, as I have defined it, or if you find for any reason that the government has not proved beyond a reasonable doubt that Mr. Tompkins acted with the willful criminal mental state required for any of the charges, as I have instructed you, then you must find him not guilty of that offense.

**Request No. 18**[17]

**State Ethics Violation Not Extortion**

You have heard evidence about certain ethical rules applicable to Massachusetts public officials.  These rules impose standards different than the criminal extortion laws at issue here. Accordingly, even if you believe that Mr. Tompkins violated one or more ethical rules, that cannot be the basis for conviction.

More specifically, you may not use evidence of any prior ethical violations by Mr. Tompkins to infer that, because of his character, Mr. Tompkins carried out the acts charged in this case.  The law prohibits such an inference because it requires that the case be judged based on whether the government proved each and every essential element of each of the two counts charging Mr. Tompkins with federal crimes.

---

[17] The defense is moving to exclude evidence of Mr. Tompkins's alleged violation of ethical rules from evidence in this trial, and it makes this request only in the event the Court denies the motion on that issue.

**Request No. 19**

**Theory of Defense**[18]

The defense asserts that there was no extortion in this case.

Mr. Tompkins signed a letter memorializing Ascend's participation in the Suffolk County Sheriff Department's offender re-entry program significantly prior to the time during which the government alleges Mr. Tompkins and Mr. Perullo began discussing Mr. Tompkins's purchase for full value of an equity interest in Ascend. The defense contends that there is no evidence tying Ascend's continued participation in the re-entry program to any *quid pro quo* promise or agreement and that, to the contrary, Mr. Tompkins would have allowed any reputable employer to participate and never threatened to rescind any agreement with Ascend in any communication with Mr. Perullo or anyone else at Ascend either before or after he first requested to purchase Ascend stock or in connection with his request for a return of his investment or the sale of the stock.

The defense further contends that Ascend's participation in the re-entry program had no material effect upon its business or its licensure with the Cannabis Control Commission. As reflected in its licensure applications, Ascend had a number of alternative means of satisfying the Commission's "positive impact plan" requirement. Accordingly, the defense asserts that Mr. Tompkins could not have intended to cause Mr. Perullo to fear economic harm from any termination of Ascend's ability to participate in the re-entry program, and any such fear by Mr.

---

[18] *See, e.g.*, *United States v. Montanez*, 105 F.3d 36, 39 (1st Cir. 1997) ("We have repeatedly recognized that a defendant is entitled to an instruction on his theory of defense if sufficient evidence is produced at trial to support the defense and the proposed instruction correctly describes the applicable law.").

22

Perullo would not have been reasonable as required to meet the fear of economic harm theory of prosecution.

Mr. Tompkins paid $50,000, representing fair market value, for the equity interest in Ascend, and the defense contends that he was entitled to receive the equity interest in exchange for that payment.  Likewise, Mr. Tompkins believed he was entitled to have his investment refunded and that Mr. Perullo had voluntarily consented to the refund, albeit on a schedule chosen by Mr. Perullo.  In fact, at the time Mr. Tompkins first requested the refund, the value of the shares he purportedly owned an interest in was greater than $50,000.

The defense asserts that neither the equity interest nor the refund was obtained via extortion and that at no time did Mr. Tompkins threaten Mr. Perullo or Ascend with economic harm or threaten to rescind any prior agreement he had reached with Ascend's CEO Andrea Cabral.

Respectfully Submitted,
STEVEN TOMPKINS
By His Attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Dated: July 16, 2026

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, July 16, 2026, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.

24