UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 25-CR-10334-MJJ |
| | ) | |
| STEVEN WAYNE TOMPKINS, | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |

## **DEFENDANT'S TRIAL BRIEF**

Now comes the defendant Steven Tompkins, by and through undersigned counsel, and respectfully submits this Trial Brief.

The defense will respectfully contend at the trial in this matter that the government's proof fails to satisfy its burden of establishing beyond a reasonable doubt several elements of Hobbs Act extortion, including those set forth below. The defense will be moving the Court for a judgment of acquittal on these bases pursuant to Fed. R. Crim. P. 29, and has requested instructions highlighting these requirements in the event the Court denies the Rule 29 motion or defers decision until after the jury has rendered a verdict.

First, the government's proof will be insufficient to establish a *quid pro quo* bribery agreement, as required to support conviction for extortion under color of official right.[1] In the

---

[1] *See United States v. DeQuattro*, 118 F.4th 424, 444 (1st Cir. 2024); *United States v. Correia*, 55 F.4th 12, 29 (1st Cir. 2022). This contention reflects the current contours of the law, which treats Hobbs Act extortion under color of official right as "the rough equivalent of . . . 'taking a bribe.'" *Evans v. United States*, 504 U.S. 255, 260 (1992). The defense, however, preserves, and expressly does not waive, its alternative contention that "*Evans* erred in equating common-law extortion with taking a bribe." Dkt. 28 at 25 (quoting *Ocasio v. United States*, 578 U.S. 282,

1

present context of a Hobbs Act prosecution against a public official, *quid pro quo* bribery demands evidence of a corrupt agreement by both the payor and the official, here Mr. Tompkins.[2]  The discovery reflects no express agreement, and the defense respectfully submits that there will be insufficient evidence of any such agreement, express or implied, at trial. Rather, the defense contends that the stock purchase between Mr. Tompkins and Mr. Perullo was simply not a part of any exchange for Mr. Tompkins's official acts.  It was a business transaction, at full market value, with a longtime friend that had nothing to do with Mr. Tompkins's official position.

Second, the government's proof will be insufficient to establish that any alleged *quid pro quo* between Mr. Perullo and Mr. Tompkins contemporaneously identified a specific official act or acts that Mr. Tompkins agreed to perform in exchange for being provided the opportunity to purchase an interest in Mr. Perullo's company, as required to support conviction for extortion under color of official right.[3]  In order to support conviction, such official acts must require an exercise of discretion on the part of the public official, as opposed to being merely ministerial in

---

302 (2016) (Thomas, J., dissenting)).

[2] *See, e.g.*, *United States v. Terry*, 707 F.3d 607, 615 (6th Cir. 2013) ("A flow of benefits from one person to a public official, to be sure, does not by itself establish bribery.  The benefits instead must be part and parcel of an agreement by the beneficiary to perform public acts for the patron."); *United States v. Jefferson*, 674 F.3d 332, 358 (4th Cir. 2012) ("[T]he public official's intent to perform acts for the payor—required for a bribery offense—is the exchange, or quid pro quo, missing from the illegal gratuity scenario."); *United States v. Siegelman*, 640 F.3d 1159, 1172 (11th Cir. 2011) (affirming instruction that "required the jury to find an agreement to exchange a specific official action for a campaign contribution"); *United States v. Schaffer*, 183 F.3d 833, 841 (D.C. Cir. 1999) (explaining that bribery "can be seen as having a two-way nexus"), *vacated as moot*; *United States v. O'Donovan*, 126 F.4th 17, 32 (1st Cir. 2025) ("The federal bribery statute criminalizes the offering and taking of bribes, but only the latter requires the parties to reach a quid pro quo agreement.").

[3] *See McDonnell v. United States*, 579 U.S. 550, 566-74 (2016); *e.g.*, *United States v. De Moya*, No. 24-3013, 2026 WL 1955627, at *4 (D.C. Cir. July 7, 2026).

2

nature.[4]

Maintaining an existing agreement with Ascend, entered over a year before, that is aligned with the policies of the Suffolk County Sheriff's Department, does not constitute an official act.[5]

Third, the government's proof will be insufficient to establish that Mr. Perullo harbored any reasonable fear of economic loss, as required to support conviction for extortion by fear of economic loss.[6]  The discovery reflects no express threat supporting any such reasonable fear. Mr. Perullo's mere subjective belief that Mr. Tompkins was being persistent in his requests does not amount to extortion as a matter of law.

Fourth, the government's proof will be insufficient to establish that Mr. Tompkins knew of or intentionally used Mr. Perullo's fear to induce Mr. Perullo to sell him an equity interest for full value in his company, as required to support conviction for extortion by fear of economic

---

[4] *See Woodward v. United States*, 905 F.3d 40, 47 (1st Cir. 2018).

[5] *United States v. DeQuattro*, 118 F.4th 424 (1st Cir. 2024), is readily distinguishable.  There, the First Circuit found sufficient evidence for the jury to convict a tribal chairman of extortion under color of official right predicated on the allegation that the defendant performed or agreed to perform "specific official acts to 'protect'" a "casino contract" with an architecture firm "from termination." *Id.* at 444.  The defendant had received "multiple monetary checks ranging from $4,000 - $10,000," a Bowflex machine, and a "Seaport Boston Hotel stay" from representatives of the firm, all of which "were for [the defendant's] personal use." *Id.* at 444-45. Beyond simply receiving these items, the defendant "requested multiple specific things of value . . . and acted like he was entitled to them . . . ." *Id.* at 445.  Additionally, the defendant "took steps to conceal the monetary payments . . . ." *Id.*  All of this is a far cry from Mr. Tompkins's receipt, for a fair-market-value payment of $50,000, of an equity interest in Mr. Perullo's company, which Mr. Tompkins duly disclosed.  Moreover, there was evidence in *DeQuattro* that the casino contract "provided a large portion of" the architecture firm's revenue. *Id.* at 446.  Here, by contrast, the evidence will show that the importance of Ascend's participation in the offender re-entry program was negligible at best to the company.

[6] *See United States v. Rivera Rangel*, 396 F.3d 476, 483 (1st Cir. 2005).

loss.[7]

Fifth, the government's proof will be insufficient to establish that Mr. Tompkins's alleged use of Mr. Perullo's fear was wrongful or that Mr. Tompkins in his requests to purchase stock ever believed or intended that he was wrongfully inducing Mr. Perullo to make a sale of any interest in his company's stock in violation of the law.[8]

Sixth, the government's proof will be insufficient to prove that Mr. Tompkins knew he was not entitled to receive an equity interest in Ascend and subsequent refund of his investment,[9] as required to support conviction, or as to Count 2 that he exchanged any promise of a specific official act in exchange for the agreement to provide him a refund, or that there was a reasonable risk of economic harm that could occur if Mr. Perullo did not consent to the refund, or that he used or believed Mr. Perullo was fearful of any charged conduct by Mr. Tompkins, or that any official act was taken or withheld based on any stock sale or refund.

In short, Mr. Tompkins never threatened Mr. Perullo, never exchanged an official act for any thing of value, and never believed that his requests to purchase stock or to sell stock or receive a refund were wrongful or willful or knowingly in violation of the law.

For reasons set forth in a previously filed motion *in limine*, *see generally* Dkt. 103, the government cannot dilute the *mens rea* required under the Hobbs Act with evidence of alleged state ethics violations by Mr. Tompkins.

Respectfully Submitted,
STEVEN TOMPKINS

---

[7] *See United States v. Brissette*, No. 16-CR-10137, 2020 WL 718294, at *11 (D. Mass. Feb. 12, 2020).
[8] *See Brissette*, 2020 WL 718294, at *13-14 & n.27 (citing cases).
[9] *See United States v. Didonna*, 866 F.3d 40, 47 (1st Cir. 2017).

By His Attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Dated: July 23, 2026

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, July 23, 2026, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.