UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEVEN WAYNE TOMPKINS,<br>Defendant | No. 25-CR-10334-MJJ<br>Leave to file granted on<br>August 18, 2026 |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION TO ADMIT EXHIBITS**

In its Opposition to Mr. Tompkins's Motion to Admit Exhibits, the government withdraws its objections to certain of the exhibits subject to the defense motion. However, four substantive objections remain.

First, the government contends that Exhibit UU "contains inadmissible hearsay." Dkt. 150 at 2. The defense does not agree with the government's position that Mr. Perullo's praise of Mr. Tompkins while calling him his friend in September of 2022, *i.e.*, while claiming he was at the same time being pressured and extorted into repaying Mr. Tompkins's investment "is 'powerful' only if offered to show that Perullo meant what he said." *Id.* Rather, the very fact that Mr. Perullo made those statements in advocating for Mr. Tompkins's re-election itself undermines the government's allegation that Mr. Perullo was being simultaneously extorted by Mr. Tompkins. Independently, the government does not address the defense contention that Mr. Perullo's statements are admissible not for their underlying truth but also because they reflect his "then existing state of mind at the very time" of the alleged extortion. Dkt. 147 at 3; *see also*

Fed. R. Evid. 803(3). If Mr. Perullo claims that the exhibit did not represent his contemporaneous state of mind, as previewed by the government in its Opposition, it is admissible as an extrinsic statement inconsistent with his testimony on a material issue, whether Mr. Perullo did or did not believe he was an extortion victim. Exhibit UU is highly material to the defense and its admissibility cannot properly be obviated just because Mr. Perullo may say he was not being truthful in sending this email to others including Mr. Tompkins himself.

Second, the government argues that "Ms. Cabral's personal knowledge and opinions regarding the defendant's commitment to reentry programs has nothing to do with *Perullo's* state of mind." Dkt. 150 at 2. The government's argument on this issue entirely overlooks the fact that some of the objected to exhibits directly demonstrate Mr. Perullo's knowledge of Mr. Tompkins's involvement in reentry programs. *See* Exhibits RR, SS, JJJ. The government does not develop any argument regarding those exhibits, and they should be admitted. Ms. Cabral's close and longstanding relationship with Mr. Tompkins is, contrary to the government's claim, relevant for two reasons: (1) because Mr. Perullo's knowledge of that relationship is relevant to the reasonableness of his claimed fear (*i.e.*, Mr. Perullo's belief in their closeness would lessen the likelihood that Mr. Tompkins would act to harm Ascend); and (2) because the close relationship makes it less likely that Mr. Tompkins would threaten Ms. Cabral's business partner, implicitly or explicitly, knowing that any harm would flow to both.

Third, the government objects to the admission of Exhibit III. In doing so, it provides no response whatsoever to the defense argument that this news article was referred to by Ms. Cabral when she messaged Mr. Tompkins's assistant who thereafter stamped his name to the September 2019 letter, making it intrinsic to this case. *See* Dkt. 147 at 6. Independently, the document

provided both Mr. Tompkins and Mr. Perullo with knowledge that Ms. Cabral had options other than the SCSD partnership. *See* Exhibit III at 3 ("Cabral's long-term vision is much more expansive. She hopes to use her political and law enforcement connections to build a larger jobs program between the marijuana industry and the state's courts and probation systems.").

Fourth, the government argues that the CCC's response to a defense subpoena indicating that it had never taken action against a licensee for failure to comply with the positive impact plan ("PIP") requirement is irrelevant. The government contends "there is no evidence that Perullo was aware of other companies' compliance—a fact that the defendant learned only through issuance of a subpoena several years after the alleged extortion." Dkt. 150 at 3. This overlooks the fact that extortion by fear of economic loss requires not only the alleged victim's subjective fear but also that such fear be objectively reasonable. Surely, the fact that no negative action had been taken against any licensee for failure to comply with the PIP requirement undermines the reasonableness of any fear Mr. Perullo may have harbored that hypothetical loss of the SCSD partnership would have jeopardized Ascend's license.

Respectfully Submitted,
STEVEN TOMPKINS
By His Attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Dated: August 18, 2026

**CERTIFICATE OF SERVICE**

I, Martin G. Weinberg, hereby certify that on this date, August 18, 2026, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.