UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL No. 25-CR-10334-MJJ |
| STEVEN W. TOMPKINS, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**GOVERNMENT'S MOTION TO ADMIT EXHIBITS**

The United States of America, through the undersigned attorneys, hereby submits this motion to admit exhibits related to the value of Ascend stock (Exhibits GG, HH, II, JJ) and of the defendant's financial records (Exhibits KK, MM, NN, AAAA-CCCC). The government anticipates that FBI FoA Elliott will be testifying tomorrow, and submits this motion in order to tailor her testimony to the evidence that will be allowed.[1] The defendant objects to the Ascend Stock charts under Rules 1006 and 106, and objects to the financial records under Rules 401 and 403.

**1. Ascend Stock Summary records (GG, HH, II, JJ)**

The defendant does not claim that the Ascend stock value is irrelevant. In fact, he has marked his own (unobjected to) exhibits charting the value of the stock over time. *See* Exhibits 298, 299. Yet the defendant attempts to preclude the government from offering its *own* charts summarizing what is essentially the same information. The only difference between the government's underlying data and the defendant's is that the defendant uses the Canadian stock exchange value and the government uses the "OTC", or "over the counter", market value, and the

[1] The government incorporates herein by reference the arguments made in its Motion to Admit Exhibits and Reply in support (ECF 145, 154).

government's charts cover a longer timeframe.[2] The OTC market allows U.S.-based investors to purchase stock in companies on a foreign stock exchange. The government chose the OTC market value because the defendant is based in the U.S., and an individual purchasing Ascend stock from the U.S. would likely do so on the OTC market. And, as the government noted in its motion to admit exhibits (ECF 145) and as set forth in Exhibit HH, the difference in value on any given day between the Canadian and OTC exchange value is *de minimus* (within a few cents per share on the majority of days; peaking at a difference of 65 cents on one outlier day).

The underlying data is complete and reliable, and there is no basis under Rule 1006 or 106 to exclude the government's chart exhibits summarizing the *same* type of data that the defendant offers in his own stock value chart exhibits (which the government, in good faith, did not object to). The evidence is relevant and the data is reliable regardless of which party is presenting it, and the government should be afforded the same opportunity to present its own demonstrative chart.

Further, to address the defendant's claim that the charts were "argumentative," the government has revised the titles and data descriptions.

**2. Financial records (KK, MM, NN, AAAA[3]-CCCC)**

The defendant's objections based on relevance and prejudice are without merit. The evidence related to defendant's financial records is directly relevant to his motive. The First Circuit has "held that when evidence goes to show motive, the relevancy hurdle is particularly low." *United States v. McMahon*, 938 F.2d 1501, 1508 (1st Cir. 1991) (finding district court "clearly acted within its discretion" in admitting evidence of defendant's financial difficulties). Here,

---

[2] Except that the government's chart begins on May 26, 2021 instead of May 5, 2021, because that's when the stock became available on the OTC exchange.

[3] Exhibit AAAA is the Bank of America business records certification.

evidence showing how the defendant spent the returned investment funds—on real estate improvements, his political campaign, and credit card payments—is probative of his motive to engage in extortion to obtain the full amount of his investment back. *See, e.g.*, *United States v. Appolon*, 695 F.3d 44, 60 (1st Cir. 2012) (evidence that defendant used proceeds of mortgage fraud scheme to purchase firearms and marijuana relevant to show motive for participating in scheme).

And, as explained in the government's motion to admit (ECF 145), the evidence is not prejudicial. Consistent with the Court's order, the government has removed references to "lifestyle" evidence. The exhibits now refer to "credit card payments," and the credit card statement detailing the expenditures has been removed, such that there are no references to potentially prejudicial "lifestyle" expenditures (i.e., purchases at Louis Vuitton and a Jamacia vacation).

With respect to the remaining information, it is not at all prejudicial, and the defendant cannot argue in good faith that it is when he has put the subject matter at issue himself. The government anticipates that Perullo will testify that the defendant told Perullo he wanted his investment back because he wanted to invest in real estate. In fact, the defendant has marked an exhibit (to which the government does not object), showing that he purchased real estate in January 2022, shortly after asking for the return of his investment. *See* Ex. 297. The defendant's financial records and corresponding summary charts show that he spent some of the returned investment funds on making improvements to that property. Clearly, there is nothing unduly prejudicial about the fact that the defendant spent money on real estate; especially when he plans to introduce his own evidence of that fact.

Similarly, the defendant stated during opening argument that "By this time [April 2022] the evidence will show Steve Tompkins asked for his investment to be reversed and asked for a

refund. He was about to run a campaign." He cannot now claim that evidence showing he used the returned investment in relation to that campaign is somehow prejudicial.

Finally, consistent with the Court's order regarding voluminous financial records, the government intends to introduce exhibits showing *only* financial information relevant to the transactions at issue. *See* Exhibits KK (6-page summary of transactions), NN (10-page exhibit showing the front and back of five checks written by the defendant following receipt of his returned investment funds), BBBB (42 pages of bank statement showing activity during the months when defendant received investment refunds), and CCCC (12 page bank statement showing activity during months when defendant received investment refunds).

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Date: August 30, 2026 By: */s/ Lauren Maynard*
Dustin Chao
Lauren Maynard
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Lauren Maynard*
Lauren Maynard
Assistant United States Attorney

Dated: August 30, 2026