UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEVEN WAYNE TOMPKINS,<br>Defendant | No. 25-CR-10334-MJJ |

**DEFENDANT'S MOTION IN LIMINE TO PRECLUDE CROSS-EXAMINATION OR OTHER EVIDENCE CONCERNING STATE ETHICS DISPOSITIONS AND SCSD EMPLOYEE POLICIES**

Defendant Steven Tompkins respectfully moves under Federal Rules of Evidence 104(a), 401, 403, 404(b),[1] 608(b), and 611 to preclude the government from referring to, questioning him about, or offering evidence concerning two civil disposition agreements with the Massachusetts State Ethics Commission in the event he chooses to testify. Neither matter involved a criminal conviction or a finding that Mr. Tompkins lied, made a false statement, falsified a record, concealed information, or acted fraudulently. The matters therefore are not proper truthfulness impeachment under Rule 608(b). The agreements, findings, penalties, and other extrinsic proof are independently barred by that rule, and any marginal relevance is substantially outweighed by unfair prejudice, confusion, and the prospect of collateral mini trials under Rule 403. At a minimum, the Court should require the government to approach the bench and identify the exact

[1] For all the reasons previously presented, *see e.g.,* Dkt. 103, the ethics matters are not admissible as substantive evidence under Rule 404(b).

question, evidentiary theory, and supporting proffer before making any reference to either matter in the jury's presence.

Mr. Tompkins further moves to preclude the government from introducing, displaying, or questioning him about the SCSD Employee Handbook or Employee Code of Conduct. These internal administrative policies do not define the elements of Hobbs Act extortion and do not establish that Mr. Tompkins's fully paid equity purchase was a prohibited gift, loan, or private benefit, that Ascend had a matter before SCSD, or that Mr. Tompkins knew he was obtaining property to which he was not entitled. Permitting the government to use these policies would invite the jury to substitute broad administrative standards for the elements of the charged offense and would create collateral disputes concerning the policies' scope, applicability, and meaning. Any marginal relevance is substantially outweighed by the dangers of unfair prejudice, confusion, misleading the jury, delay, and waste of time under Rule 403.

## I. BACKGROUND.

The first matter arose from events during the 2013 sheriff's campaign. In a consented-to disposition dated September 23, 2015, the Commission found that Mr. Tompkins identified himself as the Sheriff, displayed his official identification, and asked eight retail establishments to remove campaign signs supporting his opponent that falsely suggested the opponent was the then-current Sheriff. The agreement imposed a civil penalty.

The second matter was resolved by a consented-to final order dated March 6, 2023. It concerned the employment of a relative and allegations that employees provided childcare or other personal assistance while on duty. It, too, resulted in a civil penalty under the Massachusetts conflict of interest law. It did not adjudicate any charge of perjury, fraud, false statement,

falsification, concealment, or deception. Neither agreement is a criminal conviction, and neither establishes a character for untruthfulness.

Unlike in the context of criminal convictions, Mr. Tompkins's alleged ethical violations do not reflect findings beyond a reasonable doubt that he engaged in any conduct with criminal intent. Rather, they reflect settlements in the context of state ethics proceedings, in which a civil preponderance of the evidence standard applies, that Mr. Tompkins acted knowingly "or with reason to know." Mass. Gen. Laws ch. 268A, § 23(b)(2). As the defense has previously argued, this type of civil negligence standard "has no place in the context of Hobbs Act extortion, a crime punishable by up to 20 years' imprisonment." Dkt. 103 at 5 (citing *Ruan v. United States*, 597 U.S. 450, 466 (2022)).

## II. THE ETHICS MATTERS ARE NOT PROPER RULE 608(b) IMPEACHMENT.

Rule 608(b) permits inquiry into a specific act only when the act is probative of the witness's character for truthfulness or untruthfulness. Fed. R. Evid. 608(b). Misconduct, even serious misconduct, is not automatically probative of veracity. *See United States v. Ramirez-Rivera*, 800 F.3d 1, 79-80 (1st Cir. 2015) (excluding "evidence that the witness committed a murder [as] a specific instance of conduct not probative of the witness's truthfulness"); *Tigges v. Cataldo*, 611 F.2d 936, 938–39 (1st Cir. 1979) (affirming exclusion of cross-examination concerning a witness's prior administrative discipline and allegedly misleading interrogatory answers because the underlying conduct was not itself probative of truthfulness, extrinsic evidence was barred, the asserted inconsistency was ambiguous and of doubtful impeachment value, and the inquiry risked placing a highly prejudicial, otherwise inadmissible disciplinary matter before the jury).

The conduct described in these agreements concerns asserted misuse of public position, personnel decisions, and use of employee time. None depends upon a lie or deceptive act. Merely labeling the conduct "ethics violations" cannot convert conduct unrelated to veracity into evidence of untruthful character. Permitting the government to invoke that label would invite the jury to reason impermissibly that because Mr. Tompkins previously violated an ethics rule, he is the kind of person who would commit the charged offense or should not be believed. Rule 608(b) does not permit either inference.

The 2015 matter is particularly attenuated. The underlying conduct occurred in 2013, approximately thirteen years before trial, and involved campaign signs rather than money, property, a business relationship, or a statement bearing on veracity. Rule 609(b) does not govern because there was no conviction, but its demanding treatment of convictions more than ten years old reinforces the weakness of using this eleven-year-old civil matter. The 2023 agreement is more recent, but recency cannot supply the missing connection to truthfulness.

**III. RULE 608(b) BARS EXTRINSIC PROOF.**

Even if the Court were to permit a narrowly framed question about some particular act, Rule 608(b) expressly provides that, except for a criminal conviction under Rule 609, specific instances offered to attack a witness's character for truthfulness "may not be proved by extrinsic evidence." The government therefore may not introduce or display the disposition agreements, Commission findings, civil penalties, press releases, testimony of Commission personnel, or other documents to prove the alleged acts or to contradict Mr. Tompkins's answer. Nor should the government be allowed to place the Commission's institutional conclusions before the jury indirectly by embedding them in its questions.

## IV. RULE 403 REQUIRES EXCLUSION.

Any slight probative value would be substantially outweighed by unfair prejudice, jury confusion, delay, and waste of time. Fed. R. Evid. 403. The phrases "ethics violation," "Commission finding," and "civil penalty" carry an obvious risk that jurors will punish Mr. Tompkins for unrelated conduct or treat the Commission's conclusions as proof of criminal intent here. Fairly answering the allegations would require evidence about the state conflict of interest statute, the consent process, the surrounding campaign and workplace circumstances, and the basis for each agreed finding. Those collateral mini trials would distract from the charged transactions and improperly place a state agency's judgment before the jury.

## V. THE SCSD EMPLOYEE HANDBOOK AND CODE OF CONDUCT ARE NOT ADMISSIBLE.

The government should also be precluded from introducing, displaying, or questioning Mr. Tompkins about the SCSD Employee Handbook or the S220 Employee Code of Conduct. These documents are internal employee policies – not criminal statutes – and do not define the elements of Hobbs Act extortion or establish that Mr. Tompkins knowingly obtained property to which he was not entitled. Indeed, the Handbook expressly states that it is "informational only," that its provisions are not conditions of employment, and that the Sheriff may modify, revoke, or change them at any time. Ex. N at 5.

The Handbook's general prohibition against accepting a "gift, gratuity, favor, entertainment, testimonial, loan, or other item of monetary value" from a person with an interest before SCSD does not describe the transaction charged here. Ex. N at 13. Mr. Tompkins did not receive a gift or loan from Mr. Perullo. He paid $50,000 for an equity interest on the same terms

offered to another purchaser. Nor has the government established that Ascend had any licensing application, contract, adjudication, or other matter "before" SCSD; Ascend's licensing matters were before the Cannabis Control Commission. The Handbook does not prohibit an arm's length investment, and its generalized references to "private gain" cannot resolve the disputed question whether the equity purchase was legitimate or an unwarranted benefit. Using the policy for that purpose would merely assume the government's desired conclusion.

The S220 Code is even further removed. Its general provisions concern the conduct of Department employees, while its specific restrictions on receiving gifts or items of value concern inmates and persons acting on their behalf. Exhibits SSS-YYY at 1-5. Neither Mr. Perullo nor Ascend falls within those provisions.

Admission of these policies would invite the jury to substitute broad administrative concepts – "private gain," "public trust," "privileges," and "items of value" – for the elements the government must prove beyond a reasonable doubt. It would also require collateral litigation over whether the policies governed the elected Sheriff, whether Ascend had an "interest before" SCSD, and whether a fully paid equity purchase constituted a prohibited benefit. Any marginal relevance is substantially outweighed by the dangers of unfair prejudice, confusion, misleading the jury, delay, and waste of time. Fed. R. Evid. 403.

The government also may not use these policies as extrinsic impeachment under Rule 608(b) or to circumvent the Court's prior Rule 404(b) rulings. For all the reasons previously presented by the defense and adopted in this Court's rulings, an alleged violation of an internal SCSD policy is not admissible to establish Mr. Tompkins's character, intent, knowledge, motive, or absence of mistake.

## VI. COLLATERAL IMPEACHMENT BY CONTRADICTION IS ALSO IMPROPER.

The government may not evade Rules 608(b) and 403 by labeling the evidence impeachment by contradiction. Extrinsic evidence generally is not admissible to contradict a witness on a collateral matter. A matter is collateral when its relevance depends solely on the fact of contradiction. *United States v. Catalan-Roman*, 585 F.3d 453, 468-69 (1st Cir. 2009). Testimony by Mr. Tompkins about the events charged, his intent, or his interactions with Mr. Perullo does not make unrelated ethics matters independently relevant.

Nor should ordinary testimony in his own defense be treated as opening the door to a broad character inquiry. Only if the defense affirmatively elicits a sweeping character assertion that directly and materially conflicts with a particular act should the Court revisit the issue, and then only after a sidebar addressing the precise testimony and proposed question.

## VII. CONCLUSION.

For these reasons, the defense respectfully requests that the motion be allowed.

Respectfully Submitted,
STEVEN TOMPKINS
By His Attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

**/s/ Maksim Nemtsev**
Maksim Nemtsev, Esq.
Mass. Bar No. 690826
20 Park Plaza, Suite 1000
Boston, MA 02116

(617) 227-3700
max@mnpc.law

Dated: August 31, 2026

**CERTIFICATE OF SERVICE**

I, Martin G. Weinberg, hereby certify that on this date, August 31, 2026, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.